**This order is SIGNED.**

**Dated: July 8, 2021**



**R. KIMBALL MOSIER**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re:<br><br>ALEXANDER W. VILLESCAS and<br>LINDSAY BUNKER,<br><br>Debtors. | Bankruptcy Number: 19-26403<br><br>Chapter 7<br><br>Hon. R. Kimball Mosier |

## MEMORANDUM DECISION

Alexander Villescas and Lindsay Bunker (Debtors) were repaying their debts under a confirmed chapter 13 plan when an auto accident destroyed one of their vehicles. The other driver's insurance company paid for the damage and remitted the insurance proceeds to the Chapter 13 Trustee, who sought Court authorization to disburse them. After the Debtors converted their case to one under chapter 7, the Chapter 7 Trustee sought turnover of the insurance proceeds remaining after payment of the auto loan secured by the destroyed vehicle. The Debtors opposed the motion, arguing that the proceeds were not property of the converted estate and that they were entitled to exempt them. The Chapter 7 Trustee then objected to that exemption.

After considering the filings relevant to these contested matters and the parties' oral arguments, and after conducting an independent review of applicable law, the Court issues the

following Memorandum Decision denying the motion for turnover, overruling the objection to the

Debtors' exemption, and ordering the disbursement of the insurance proceeds to the Debtors.

## I. JURISDICTION

The Court's jurisdiction over these contested matters is properly invoked pursuant to 28

U.S.C. § 1334 and § 157(b)(1). These matters are core proceedings within the definition of 28

U.S.C. § 157(b)(2)(A), (B), and (E), and the Court may enter a final order. Venue is appropriate

under 28 U.S.C. § 1409.

## II. FACTUAL BACKGROUND

The facts relevant to this dispute are undisputed, straightforward, and relatively few. The

Debtors filed this case, initially under chapter 13, on August 30, 2019. Among their assets was a

2010 Ford Fusion, valued at $3,500 and encumbered by a lien in favor of Capital One Auto

Finance.[1] The Debtors claimed the Fusion as exempt under Utah Code Ann. § 78B-5-506(3)(b),

but listed $0 as the amount of the exemption. The choice to claim a $0 exemption is presumably

attributable to the Debtors' belief that there was no equity in the Fusion to exempt—they listed the

debt to Capital One as $4,000,[2] although Capital One subsequently filed a claim asserting a lower

balance of $2,569.57.[3] The Chapter 13 Trustee did not challenge the exemption in the Fusion. The

Debtors' chapter 13 plan was confirmed effective January 28, 2020,[4] and pursuant to the terms of

---

[1] Dkt. No. 12, at 11, 22.
[2] *Id.* at 22.
[3] Claim 4-1.
[4] *See* Dkt. No. 32, ¶ 1.

2

the confirmation order and the plan, property of the estate vested in the Debtors upon plan confirmation.[5]

On September 23, 2020, Alexander Villescas was driving the Fusion and was involved in an auto accident with another vehicle, which resulted in the destruction of the Fusion. The other driver was at fault, and that's driver's insurance company, Farm Bureau Financial Services, paid a $4,301.35 settlement on account of the accident.[6]

On or about December 2, 2020, Farm Bureau informed the Chapter 13 Trustee that the Fusion had been totaled and requested direction on where to send the $4,301.35 in insurance proceeds (Proceeds).[7] That same day, the Chapter 13 Trustee filed a motion to modify the Debtors' plan to accept the Proceeds as a lump sum plan contribution, from which the Chapter 13 Trustee would pay Capital One's allowed secured claim and pay $0 to the Debtors on account of their claimed exemption in the Fusion.[8] The Court entered an order on January 5, 2021 granting that motion, which directed Farm Bureau to forward the Proceeds to the Chapter 13 Trustee and authorized the Chapter 13 Trustee to use the Proceeds "to pay off the allowed, secured portion" of Capital One's claim and "to disburse funds to the Debtor[s] in the amount of $0.00 to represent the vehicle exemption pursuant to Schedule C."[9]

---

[5] *Id.* ¶ 26, Dkt. No. 9, Part 7.1.
[6] The component parts of the settlement were: (1) $3,900 representing the Fusion's cash value, (2) $278.85 in taxes, and (3) $122.50 in fees, considering the age of the Fusion, registration, and emissions. Dkt. No. 61, Ex. 1.
[7] Dkt. No. 46, ¶ 2; Dkt. No. 36, ¶ 5.
[8] Dkt. No. 36, ¶¶ 6-7.
[9] Dkt. No. 39, ¶¶ 3-4, 6.

3

The Debtors then amended their Schedule C on January 14, 2021 to exempt $3,000 in value in the Fusion,[10] the maximum allowed under Utah law. The amendment did not change the statutory basis for the exemption. Shortly after filing that amendment, the Debtors converted this case to one under chapter 7 on January 20, and Stephen Rupp was appointed as Chapter 7 Trustee.

The Chapter 13 Trustee received the Proceeds on January 25, 2021 and two days later filed a motion seeking authorization to disburse them to pay Capital One the $1,812.41 remaining on its claim with the balance of $2,488.94 going to the Debtors on account of their recent amendment to their exemption in the Fusion or to another party "as the Court deems proper" (Motion to Disburse).[11] The Debtors and the Chapter 7 Trustee each claimed entitlement to the $2,488.94 remaining after payment of Capital One's claim (Remainder), and the Chapter 7 Trustee specifically objected to the Motion to Disburse and requested that the Remainder be turned over to him because it was not exempt (Motion for Turnover).[12] The Debtors then objected to the Motion for Turnover, arguing that they should receive the Remainder for two reasons: first, the Proceeds were not property of the converted chapter 7 estate and, second, their exemption of $3,000 in value in the Fusion applied to the Proceeds and exceeded the Remainder.[13] Because neither party objected to payment of Capital One's claim from the Proceeds, on March 4 the Court entered an order authorizing such payment, with the Chapter 13 Trustee to hold the Remainder in trust until further order of the Court.[14]

---

[10] Dkt. No. 41.
[11] Dkt. No. 46, at 2.
[12] Dkt. No. 49, at 2.
[13] Dkt. No. 50, at 1-2.
[14] Dkt. No. 53, ¶¶ 2-3.

4

After conversion, the Court issued a notice establishing February 16, 2021 as the date for the Debtors' meeting of creditors under 11 U.S.C. § 341.[15] On March 17, the Chapter 7 Trustee filed an objection to the Debtors' amended Schedule C, specifically to "any claimed exemption by the [D]ebtors of the insurance proceeds from the destruction of a 2010 Ford Fusion" (Objection to Exemption).[16] The objection acknowledged that the Debtors "are entitled to an automobile exemption of $3,000.00 against the 2010 Ford Fusion," but argued against "any claimed exemption of the [Proceeds] . . . except under [Utah Code Ann.] § 78B-5-507 which, while providing for exemption of proceeds from destroyed property, does not provide for exemption of proceeds from a destroyed car."[17]

### III. DISCUSSION

For the Chapter 7 Trustee to prevail on his Motion for Turnover, the Proceeds must be property of the chapter 7 estate and the Debtors must be unable to exempt them. For the Debtors to prevail, the Proceeds must either be excluded from the chapter 7 estate or an exemption must apply to them. This case therefore presents two issues to the Court for resolution. First, do the Proceeds constitute property of the Debtors' chapter 7 bankruptcy estate? Second, can the Debtors claim an exemption in the Proceeds under applicable Utah exemption law? The Court will address each in turn.

---

[15] Dkt. No. 45.
[16] Dkt. No. 59.
[17] *Id.*

## A. Whether the Proceeds Constitute Property of the Chapter 7 Estate

Before one can answer whether property is property of a bankruptcy estate, the precise nature of the property interest must be established. "Property interests are created and defined by state law."[18] "Once that state law determination is made," courts must then "look to federal bankruptcy law to resolve the extent to which that interest is property of the estate."[19] Here, the auto accident involving the Fusion gave rise to a tort claim in favor of the Debtors and against the at-fault driver. The Proceeds derive from that claim and represent compensation from the other driver's insurer for the damage caused to the Fusion. Having defined the relevant property interests, the question is whether they are property of the Debtors' bankruptcy estate.

The starting point for what constitutes property of a bankruptcy estate is 11 U.S.C. § 541,[20] which provides that such estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."[21] The commencement of the case, i.e., the petition date,[22] draws a crucial line of demarcation between what is property of the estate and what is not.[23] Specifically, the phrase "as of the commencement of the case" places a temporal "limitation[] on the reach of the bankruptcy estate" by "establish[ing] a clear-cut date after which property acquired

---

[18] *Butner v. United States*, 440 U.S. 48, 55 (1979).
[19] *Parks v. FIA Card Servs., N.A. (In re Marshall)*, 550 F.3d 1251, 1255 (10th Cir. 2008) (quoting *Bailey v. Big Sky Motors, Ltd. (In re Ogden)*, 314 F.3d 1190, 1197 (10th Cir. 2002)).
[20] All subsequent statutory references are to title 11 of the United States Code unless otherwise indicated.
[21] § 541(a)(1).
[22] *See* § 301(a) ("A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter.").
[23] *See Cohen v. Chernushin (In re Chernushin)*, 911 F.3d 1265, 1269-70 (10th Cir. 2018) ("We have 'emphasized § 541(a)(1) limits estate property to the debtor's interests as of the commencement of the case.'" (quoting *Sender v. Buchanan (In re Hedged-Invs. Assocs., Inc.)*, 84 F.3d 1281, 1285 (10th Cir. 1996))).

6

by the debtor will normally not become property of the bankruptcy estate."[24] As a general rule, therefore, property acquired post-petition does not become property of the estate but remains a debtor's property instead. But chapter 13, under which the Debtors originally filed this case, operates under a notable exception: "Property of the estate includes, in addition to the property specified in section 541 of this title[,] all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first."[25] Had the Debtors remained in chapter 13, their chapter 13 estate would have included the tort claim and the Proceeds.

If a debtor converts a chapter 13 case to another chapter, however, yet another rule applies to determine property of the estate under the new chapter. As relevant here, the Bankruptcy Code states: "when a case under chapter 13 of this title is converted to a case under another chapter under this title[,] property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the

---

[24] *Id.* at 1270 (quoting *In re Hedged-Invs. Assocs., Inc.*, 84 F.3d at 1285.) The principle that the petition date operates as the reference point for determining what property interests become part of a bankruptcy estate is long-standing. In a decision under the Bankruptcy Act of 1898, the Supreme Court noted the effect of the petition date: "We think that the purpose of the law was to fix the line of cleavage with reference to the condition of the bankruptcy estate as of the time at which the petition was filed, and that the property which vests in the trustee at the time of adjudication is that which the bankrupt owned at the time of the filing of the petition." *Everett v. Judson*, 228 U.S. 474, 479 (1913).

[25] § 1306(a)(1); *see also In re Drew*, 325 B.R. 765, 770 (Bankr. N.D. Ill. 2005) ("[P]roperty that a Chapter 13 debtor acquires post-petition . . . becomes property of the estate pursuant to § 1306, in contrast to the post-petition acquisitions that do not become part of a Chapter 7 or Chapter 11 estate. Accordingly, it has been held that a Chapter 13 estate can include gifts, inheritances and windfalls that are acquired by the debtor post-petition." (citations omitted)); *In re Easley*, 205 B.R. 334, 335 (Bankr. M.D. Fla. 1996) ("[W]hen a Chapter 13 debtor suddenly and unexpectedly inherits money or property prior to the completion of the plan, the new assets become property of the estate pursuant to Sections 541 and 1306 of the Bankruptcy Code." (citing *In re Euerle*, 70 B.R. 72, 73 (Bankr. D.N.H. 1987))).

debtor on the date of conversion."[26] Bad-faith conversions aside, § 348(f) effectively removes

§ 1306(a)(1) from the property of the estate inquiry: "[I]n most cases, the property that came into

the estate only because of [§] 1306(a) is not included in the estate in the converted case."[27] Instead,

it returns the focus of the inquiry to the initial line of demarcation—the petition date.[28] Simply put,

for the Proceeds to be property of the Debtors' chapter 7 estate, they—or the tort claim from which

they derive—must have been property of the Debtors' chapter 13 estate on the petition date and in

the possession of or under the control of the Debtors on January 20, 2021.[29] The Court will address

these two elements in turn.

Upon initial consideration, the analysis of the first element appears obvious: The Proceeds

and the tort claim could not have been property of the chapter 13 estate on the petition date because

they did not exist at that time—the accident that destroyed the Fusion and gave rise to the post-

petition tort claim against the at-fault driver lay over a year in the offing. Whether § 1306(a)(1)

---

[26] § 348(f)(1)(A). This rule, too, has an exception: "If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." § 348(f)(2). Since no party has alleged that the Debtors converted their case in bad faith, this exception does not apply here.

[27] *Bogdanov v. Laflamme (In re Laflamme)*, 397 B.R. 194, 202 (Bankr. D.N.H. 2008) (quoting 8 Lawrence P. King, *Collier on Bankruptcy* ¶ 1306.04 (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2008)); *see also Harris v. Viegelahn*, 575 U.S. 510, 517 (2015) ("Absent a bad-faith conversion, § 348(f) limits a converted Chapter 7 estate to property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed."); *Wyss v. Fobber (In re Fobber)*, 256 B.R. 268, 278 (Bankr. E.D. Tenn. 2000) ("[Section] 348(f)(1)(A) was designed to mitigate the effect of § 1306(a) in cases converted from chapter 13 by excluding from property of the estate in the converted case property brought into the estate under § 1306(a).").

[28] *See In re Barrera*, 620 B.R. 645, 648 (Bankr. D. Colo. 2020) ("With a good faith conversion, the measuring date is the petition date and, therefore, prepetition assets are included but postpetition assets are not."), *aff'd sub nom. Rodriguez v. Barrera (In re Barrera)*, BAP No. CO-20-003, 2020 WL 5869458 (10th Cir. BAP Oct. 2, 2020), *appeal docketed*, No. 20-1376 (10th Cir. Oct. 15, 2020); *DiBraccio v. Ferretti (In re Ferretti)*, 230 B.R. 883, 889 (Bankr. S.D. Fla. 1999) ("[T]he statutory scheme of 11 U.S.C. § 348(f)(1) indicates that the relevant date for determining property of the Chapter 7 estate after conversion from Chapter 13 is the original filing date."), *aff'd*, 268 F.3d 1065 (11th Cir. July 25, 2001) (table).

[29] *See In re Exume*, No. 8:13-bk-15642-KRM, 2016 WL 7076982, at *2 (Bankr. M.D. Fla. Dec. 5, 2016) ("Under § 348(f)(1)(A), courts must look to: (1) whether the debtor's property was property of the estate on the date of original petition, and (2) whether the property remained in the possession of the debtor on the date of conversion.").

would have brought the tort claim and Proceeds into the Debtors' chapter 13 estate is irrelevant and, absent § 1306(a)(1), post-petition causes of action generally are not property of the estate.[30] The Chapter 7 Trustee contends, however, that because the Proceeds represent compensation for damage to the Fusion—an asset that was indisputably property of the Debtors' estate on the petition date—they are therefore property of the estate as well.

The Chapter 7 Trustee is correct. Property of the estate includes "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case."[31] The Code does not define "proceeds," but courts have interpreted the term broadly, holding that its reach exceeds the definition of proceeds under the Uniform Commercial Code and "encompass[es] any conversion in the form of property of the estate."[32] As adopted by Utah, the UCC defines proceeds to include, "to the extent of the value of collateral, claims arising out of the loss [of] . . . or damage to, the collateral."[33] The Proceeds and the tort claim from which they derive fall squarely within that definition and, by extension, the definition of proceeds under § 541(a)(6) and are therefore property of the Debtors' estate.

---

[30] *See, e.g.*, *Sherman v. Wal-Mart Assocs., Inc.*, 550 B.R. 105, 109 (N.D. Tex. 2016) ("Once [the debtor] converted her bankruptcy case from one under Chapter 13 to one under Chapter 7, her post-petition [employment discrimination] claim no longer belonged to the estate."); *Farmer v. Taco Bell Corp.*, 242 B.R. 435, 440 (W.D. Tenn. 1999) ("Plaintiffs' cause of action in the present case arose after confirmation of the Chapter 13 plan but prior to the conversion to a Chapter 7 bankruptcy. Section 348(f)(1)(A) clearly dictates that any property acquired during that time-frame is not part of the bankruptcy estate.").

[31] § 541(a)(6).

[32] *McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 312 (5th Cir. 2008) (quoting *In re Hanley*, 305 B.R. 84, 86-87 (Bankr. M.D. Fla. 2003)).

[33] Utah Code Ann. § 70A-9a-102(64)(d) (2020).

Case law buttresses this conclusion. In the case of *In re Reed*,[34] the debtor filed suit in the

U.S. Bankruptcy Court for the Eastern District of Pennsylvania against the Philadelphia Housing

Authority and other defendants for damages arising from a fire in her apartment that occurred after

she had filed chapter 7. She alleged that the defendants' negligent electrical repair work caused

the fire, which completely damaged her personal property and gave rise to other claims. The

defendants moved to dismiss the complaint on the grounds that the bankruptcy court lacked

subject-matter jurisdiction over the claims because they were non-core proceedings unrelated to a

case under title 11. The bankruptcy court agreed except with respect to the claim for damage to

the debtor's personal property. The court held that because the personal property was property of

the debtor's chapter 7 estate and claims for damages thereto could have an effect on the estate, the

court had jurisdiction over those claims as a related-to, non-core proceeding.

> [P]ostpetition causes of action must be scrutinized carefully insofar as bankruptcy jurisdiction is concerned, since property of the estate in a chapter 7 case is determined, generally, as of the date the bankruptcy petition was filed. Thus a tort claim which arises postpetition may be unrelated to a debtor's bankruptcy case, in which instance it could not be heard in bankruptcy.
> . . . .
> The one claim over which I do possess jurisdiction is the debtor's damage claim as to personal property. To the extent the debtor's personal property, which existed as of the date of her filing bankruptcy, was damaged by the negligent conduct of the defendants, there is ample support for concluding that jurisdiction exists even though the negligence occurred postpetition. Although 11 U.S.C. § 541(a)(1) refers to property interests "as of the commencement of the case," the debtor is correct that under 11 U.S.C. § 541(a)(6) the estate includes the postpetition proceeds from such property interests. Those "proceeds" may include insurance payments or damage claims; the critical factor is that, although the right to payment arose postpetition, the property at issue was prepetition property which became part of the estate.
> . . . .

---

[34] *Reed v. Phila. Hous. Auth. (In re Reed)*, 94 B.R. 48 (E.D. Pa. 1988).

10

. . . Should the debtor prevail, the proceeds from property duly scheduled and claimed as exempt by the debtor shall be paid to the debtor to the extent of her exemption claim or any timely amendment thereto. The proceeds from property not properly scheduled shall go to the chapter 7 trustee for distribution to creditors.[35]

Courts have cited the *Reed* court's analysis approvingly in analogous contexts. In the case of *In re Haynes*,[36] the debtor held an interest in a medical malpractice claim on the petition date and, post-petition, hired a law firm to pursue it. The debtor subsequently asserted that the firm itself committed malpractice in prosecution of that claim, and a dispute arose over whether the legal malpractice claim was property of the estate. Citing *Reed* for the proposition that "[p]roceeds of estate property under Section 541 of the Bankruptcy Code include claims for damage to property of the estate, even where the damage occurs and the right to payment arises post-petition," the court held that although the legal malpractice claim was "a damage claim which arose postpetition, it came into existence as a result of alleged damage to property of the estate, i.e.[,] the medical malpractice claim," and therefore constituted proceeds of that claim under § 541(a)(6) and was property of the estate.[37]

The Ninth Circuit Bankruptcy Appellate Panel cited *Reed* and *Haynes* in the case of *In re Rist*,[38] where the debtor entered into a pre-petition agreement to sell real property that was canceled because the purchasers failed to qualify for financing. Despite the cancelation, a deed to the purchasers was recorded after the debtor filed chapter 7, and she filed suit in state court against the

---

[35] *Id.* at 51-53.

[36] *In re Haynes*, No. 93-72106, 1999 WL 33592904 (Bankr. C.D. Ill. Mar. 2, 1999).

[37] *Id.* at *5-6. *Cf. In re Barrera*, 620 B.R. at 648 ("[C]ourts have treated the proceeds from a pre-conversion sale of property as property of the estate 'as of the petition date' under § 348(f)(1)(A).").

[38] *Rist v. Whitmore (In re Rist)*, BAP Nos. CC-05-1138-JBK, CC-05-1214-JBK, 2006 WL 6811007 (9th Cir. BAP Feb. 13, 2006).

escrow company and the purchasers. When the chapter 7 trustee learned of the suit and reopened the bankruptcy case, the question became whether the claims were property of the estate. In resolving that question, the BAP drew a distinction between "the claim for wrongful recording of the deed" and the underlying real property: "At the time Rist filed her petition, only the property existed. During the time the property belonged to the estate, a claim arose which was . . . different from the property itself."[39] Even so, the BAP stated unequivocally that "[t]here is no basis for the assertion that torts against property of the estate (in this case, slander of title) do not belong to the estate because they arise postpetition; if this were the law, a trustee would be powerless to redress many types of damage to estate property. The correct rule is that claims resulting from torts to property of the estate are themselves property of the estate."[40]

These cases—chapter 7 cases all—demonstrate that even in the absence of § 1306(a)(1), post-petition claims for damage to property of the estate are included in the estate. Such claims are readily distinguishable from post-petition claims that do not involve damage to estate property, which do not become property of the chapter 7 estate upon conversion. In the present case, the Proceeds represent payment on a post-petition claim against the at-fault driver for post-petition tortious damage to property of the estate. Based on the expansive reach of the term "proceeds" in § 541(a)(6) and relevant case law, that claim and the Proceeds derived from it are patently property of the petition-date estate.

In order for the Proceeds to become property of the chapter 7 estate, however, § 348(f)(1) also requires that the Debtors must have had possession or control of them or the tort claim on the

---

[39] *Id.* at *2.
[40] *Id.* at *1 (citing § 541(a)(7) and collecting cases).

12

conversion date. The parties largely passed over this requirement in their briefing and oral

argument; only the Chapter 13 Trustee offered a terse assertion that the Proceeds did not remain

in the Debtors' possession or control on the conversion date.[41] It is true that Farm Bureau did not

remit the Proceeds to the Chapter 13 Trustee until five days after the Debtors converted their case

to chapter 7, but that ignores whether the Debtors had possession or control of the tort claim on

the conversion date.

The Court concludes that the Debtors had possession of that claim on the conversion date

through § 1306(b) and the order confirming the Debtors' chapter 13 plan. Section 1306(b) states

that "[e]xcept as provided in a confirmed plan or order confirming a plan, the debtor shall remain

in possession of all property of the estate." This provision allows a "debtor [to] remain[] in

possession and control of all property of the estate unless the debtor desires otherwise."[42] Put

another way, "'[p]ossession' of property of the estate is always in the debtor in a Chapter 13 case—

absent a contrary provision of the plan or confirmation order."[43] Neither the Debtors' confirmed

chapter 13 plan nor the order confirming that plan contain a provision altering the application of

§ 1306(b). Instead, each expressly provides that property of the estate vests in the Debtors upon

confirmation.[44] The definition of "vest" is "to place or give into the possession or discretion of

---

[41] Dkt. No. 67, at 5.

[42] Keith M. Lundin, Lundin on Chapter 13, § 45.1, ¶ 1, LundinOnChapter13.com (last visited July 7, 2021).
Moreover, "[i]n stark contrast to a Chapter 7 case, the Chapter 13 trustee does not interrupt the debtor's possession
or enjoyment of estate property. *Id.* ¶ 2.

[43] *Id.* § 120.3, ¶ 2; *see also Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) ("[U]nder Chapter 13 the
debtor retains possession of his property.").

[44] This follows the automatic vesting language of § 1327(b), which "generally effects a revesting of the property of
the bankruptcy estate in debtors upon confirmation of a Chapter 13 plan of reorganization." *United States v.
Richman (In re Talbot)*, 124 F.3d 1201, 1207 (10th Cir. 1997). In particular, that provision states: "Except as
otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property
of the estate in the debtor." § 1327(b).

some person or authority"[45] or "[t]o give (a person) an immediate, fixed right of present or future

enjoyment."[46] Confirmation vested the Fusion in the Debtors, and when the tort claim for damage

to the Fusion arose post-petition, the Debtors came into possession of it and remained in possession

on the conversion date. That Farm Bureau had not yet disbursed the Proceeds on the conversion

date is not material; the Debtors possessed a claim to the Proceeds, and that is sufficient for

purposes of § 348(f)(1).

The Court concludes that both elements of § 348(f)(1) have been satisfied: the tort claim

and Proceeds were property of the estate on the petition date and the tort claim remained in the

Debtors' possession on the conversion date. Accordingly, the tort claim and the Proceeds became

part of the chapter 7 estate upon conversion.

## B. Whether the Proceeds Are Exempt

Section 522(b) permits debtors to exempt property from property of the estate, and such

exemptions will be either the federal exemptions listed in § 522(d) or the exemptions offered by a

debtor's state.[47] Utah has chosen to opt out of the federal exemptions, precluding the Debtors from

claiming exemptions under § 522(d) and requiring them to claim exemptions under applicable

Utah law.[48] The Debtors initially claimed an exemption of $0 in the Fusion under Utah Code Ann.

§ 78B-5-506(3)(b), which provides that "[a]n individual is entitled to an exemption, not exceeding

---

[45] Webster's New Collegiate Dictionary 1302 (8th ed. 1974).
[46] *Vest*, Black's Law Dictionary (8th ed. 2005).
[47] *In re Abel*, 622 B.R. 312, 316 (Bankr. D. Utah 2020).
[48] *See* Utah Code Ann. § 78B-5-513 (2020) ("An individual may not exempt from the property of the estate in any bankruptcy proceeding the property specified in Subsection (d) of Section 522 of the Bankruptcy Reform Act (Public Law 95-598), unless the individual is a nonresident of this state and has been for the 180 days immediately preceding filing for bankruptcy.").

14

$3,000 in value, of one motor vehicle."[49] The statutory language used here is important. "Value"

is defined as "fair market value of an individual's interest in property, exclusive of valid liens."[50]

Rather than permitting debtors to exempt a vehicle itself, the Utah Legislature has limited the

exemption to $3,000 in value of an individual's interest in the vehicle. This value-of-interest

exemption stands in contrast to other portions of the Utah Exemptions Act that allow debtors to

exempt the asset itself, regardless of value.[51]

    The Chapter 13 Trustee did not object to that exemption, and no party disputes that the

Debtors were entitled to claim it. The Debtors then amended their Schedule C to exempt $3,000

in value in the Fusion after the accident but prior to conversion. Rule 1009(a) gives debtors the

right to amend their schedules "as a matter of course at any time before the case is closed,"[52] and

no party has challenged the Debtors' ability to amend the exemption in the Fusion. Instead, the

Chapter 7 Trustee's objection goes to the substance of the exemption.[53]

---

[49] Utah Code Ann. § 78B-5-506(3)(b) (2020).

[50] Utah Code Ann. § 78B-5-502(12) (2020).

[51] *See, e.g.*, Utah Code Ann. § 78B-5-505(1)(a)(viii)(A) (2020) (permitting an exemption in one clothes washer and dryer, refrigerator, freezer, stove, microwave oven, and sewing machine). Of course, some of these assets can be worth more than $3,000, even substantially so, but under Utah law they are completely exempt whatever their value.

[52] Fed. R. Bankr. P. 1009(a).

[53] Ordinarily, a party in interest has thirty days to object to an amended exemption, *see* Fed. R. Bankr. P. 4003(b) ("[A] party in interest may file an objection to the list of property claimed as exempt within 30 days after the meeting of creditors held under § 341(a) is concluded or within 30 days after any amendment to the list or supplemental schedules is filed, whichever is later."), but when a debtor converts to chapter 7, the Rule 4003(b) objection period restarts. Fed. R. Bankr. P. 1019(2)(B). The Rule 4003(b) objection period will not restart, however, if "the case was converted to chapter 7 more than one year after the entry of the first order confirming a plan under chapter 11, 12 or 13." Fed. R. Bankr. P. 1019(2)(B)(i). While the order confirming the Debtors' chapter 13 plan was entered on April 3, 2020, confirmation was effective as of January 28, 2020. But even if the effective date can be used for purposes of Rule 1019(2)(B)(i), an issue this Court does not decide, that exception does not apply here. The Debtors converted their case to chapter 7 on January 20, 2021, less than one year after the effective date of plan confirmation. When the Debtors converted to chapter 7, therefore, the Chapter 7 Trustee had thirty days from the conclusion of the chapter 7 § 341(a) meeting to file an objection to the Debtors' exemptions. His objection, filed twenty-nine days after the § 341(a) meeting, was timely.

As the Court understands it, the Chapter 7 Trustee contends that debtors converting from chapter 13 to chapter 7 can only exempt what assets remain of the petition-date chapter 13 estate in the form that they exist on the conversion date. In other words, if an asset exempted in chapter 13, such as a vehicle, changes form post-petition, such as being reduced to proceeds, there must be an exemption covering that new form of asset as it exists on the conversion date in order for it to be exempt in the converted chapter 7 estate. Accordingly, the Chapter 7 Trustee acknowledges that the Debtors are entitled to a $3,000 exemption in the Fusion but, because the Fusion no longer existed on the conversion date, he argues that the Debtors must choose an exemption in the asset that did exist on the conversion date: the Proceeds.[54] And while Utah law provides exemptions in proceeds derived from certain exempt property, it does not do so for proceeds derived from vehicles.[55] Therefore, the Chapter 7 Trustee asserts that the Debtors cannot exempt the Proceeds.

The Court disagrees because the assumptions regarding the effect of conversion that underlie the Chapter 7 Trustee's argument do not find support in statute or case law. There is no doubt that conversion from chapter 13 to chapter 7 triggers certain significant consequences— notably, § 348(f) prompts a redefinition of the chapter 7 estate, which will necessarily differ from the chapter 13 estate as it exists immediately prior to a good-faith conversion, if only because a chapter 13 debtor's post-petition wages do not become property of the chapter 7 estate.[56] But conversion does not prompt a reevaluation of whether a debtor can exempt whatever property

---

[54] The Chapter 7 Trustee also acknowledges that if the Debtors had received the Proceeds, used them to purchase a replacement vehicle, claimed an exemption in it, and then converted to chapter 7, that replacement vehicle would be exempt (up to $3,000 in value) in chapter 7 because Utah law offers a motor vehicle exemption.

[55] *See* Utah Code Ann. § 78B-5-507 (2020).

[56] *Harris*, 575 U.S. at 512-13.

enters the chapter 7 estate. The conversion date is not determinative of a debtor's exemptions; instead, "[a] debtor's right to an exemption is determined as of the date that the bankruptcy petition is filed."[57] "In the case of amended claims of exemption, the amendment relates back to, and is effective as of, the petition date."[58] And with exceptions not applicable here, the Code expressly states that conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief."[59] "In other words, a converted case is commenced on the date the initial bankruptcy petition was filed, not on the date it was converted."[60] This leads to a relatively simple syllogism: If exemptions are determined as of the petition date, and conversion does not change the petition date, then a debtor's exemptions in a converted case are determined according to those made when the case was filed. The Rules bear this out: A Schedule C filed in chapter 13 is deemed filed in a converted chapter 7 case,[61] implying there is no need to reclaim exemptions at conversion. Therefore, just as conversion retrains the focus on the initial line of demarcation in determining what property becomes part of the converted chapter 7 estate, it does likewise with respect to exemptions.

---

[57] *Lampe v. Iola Bank & Trust (In re Lampe)*, 278 B.R. 205, 210 (10th Cir. BAP 2002) (citations omitted), *aff'd sub nom. Lampe v. Williamson (In re Lampe)*, 331 F.3d 750 (10th Cir. 2003); *see also In re Gentry*, 459 B.R. 861, 863-64 (Bankr. M.D. Fla. 2011) ("In bankruptcy cases, the relevant date for determining a proper claim of exemption is the petition date." (citation omitted)).

[58] *In re Gentry*, 459 B.R. at 864 (citing *In re Bennett*, 395 B.R. 781, 786 (Bankr. M.D. Fla. 2008)); *see also In re Hale*, 511 B.R. 870, 879 (Bankr. W.D. Mich. 2014) ("When a debtor amends an exemption, it relates back to the bankruptcy case filing date." (collecting cases)).

[59] § 348(a).

[60] *Standiferd v. U.S. Tr. (In re Standiferd)*, 641 F.3d 1209, 1215 (10th Cir. 2011); *see also In re Michael*, 699 F.3d 305, 310 (3d Cir. 2012) ("[W]hen a debtor converts a Chapter 13 case to Chapter 7, the order converting the case is effectively backdated to the time of the order for relief under Chapter 13, which is the date of the filing of the Chapter 13 petition." (citation omitted)).

[61] Fed. R. Bankr. P. 1019(1)(A).

Here, the Debtors properly claimed an exemption of $0 in the Fusion initially and subsequently amended the amount of that exemption. Because amendments relate back to the petition date, the Debtors are treated as having claimed a $3,000 exemption in value in the Fusion from the commencement of the case. That the Fusion changed form post-petition and became the Proceeds did not prevent the Debtors' exemption from carrying over to the Proceeds. As noted previously, the Debtors did not exempt the Fusion, but rather $3,000 of the Fusion's value. Since the Proceeds represent the value of the Fusion liquidated to cash, the Debtors remain entitled to a $3,000 value exemption in the Proceeds. The Chapter 7 Trustee admits that this would have been the result had the Debtors remained in chapter 13—their exemption would have applied to the Proceeds and they would have been entitled to the Remainder. The Chapter 7 Trustee also admits that the Debtors would have been able to claim an exemption against a replacement vehicle had they used the Proceeds to purchase one prior to conversion. These admissions support the Court's conclusion that the destruction of the Fusion did not prevent the exemption from carrying over to the Proceeds or, in the hypothetical case of the replacement vehicle, proceeds of the Proceeds.

These admissions also confirm what lies at the heart of the Chapter 7 Trustee's argument: The act of conversion deprived the Debtors of their exemption in the Proceeds. If the Debtors were entitled to an exemption in the Proceeds as long as they remained in chapter 13 but are not so entitled now, it must be that conversion makes the difference. Under this view, an exemption in an asset reduced to proceeds post-petition would carry over to those proceeds until conversion, at which time the exemption would cease to apply and a debtor would be obligated to select a new exemption applicable to the proceeds, if available. But there is no statute or rule that supports this

18

purported effect of conversion on exemptions. Conversion does not terminate "carried over" exemptions in proceeds. Nor does it prompt a second round of exemption-claiming in the assets that enter the chapter 7 estate. Because exemptions are determined as of the petition date and because the Debtors' claimed exemption of $3,000 of the Fusion's value carried over to the Proceeds, the Debtors did not need to re-exempt the Proceeds upon conversion. Their petition-date exemption was still effective and unaltered by conversion.

As a result, the Chapter 7 Trustee's insistence that Utah Code Ann. § 78B-5-507 offers the only basis to exempt the Proceeds in chapter 7 misses the mark. Simply put, that provision is irrelevant to this dispute. This case turns on an issue of federal law, namely, the effect conversion has on a debtor's properly-claimed exemptions, and the Court has determined that conversion did not deprive the Debtors of their exemption in the Proceeds under Utah Code Ann. § 78B-5-506(3)(b). Therefore, there is no need to consider whether § 78B-5-507 provides a means to exempt the Proceeds. To be sure, had the Fusion been totaled pre-petition, leaving the Debtors with the Proceeds on the petition date, § 78B-5-507 would have had a role to play. The Debtors themselves admit that they likely would not have been entitled to exempt the Proceeds in that instance.[62] This makes sense: Exemptions are determined as of the petition date, and if on the petition date the Debtors held the Proceeds, they could not have claimed an exemption in them under § 78B-5-506(3)(b), since the Fusion did not exist on the petition date, or under § 78B-5-507, because Utah law does not provide for an exemption in the proceeds of a vehicle. But where the

---

[62] *See* Dkt. No. 58, at 3.

19

Debtors held the Fusion on the petition date and properly exempted it, § 78B-5-507 does not come into effect to determine the Debtors' exemption in the Proceeds post-petition.

In addition, the Chapter 7 Trustee's argument fails an important litmus test concerning the effect of conversion on the Debtors. The intent of § 348(f)(1)(A) is to "place debtors in a case converted from chapter 13 to chapter 7 in the same economic position they would have occupied if they had filed chapter 7 originally."[63] Although this principle is typically cited to support the exclusion of property captured by § 1306(a)(1) from a converted chapter 7 estate, the Court believes it applies with equal force to exemptions. If a converted chapter 7 case is commenced on the petition date and exemptions are determined as of that date, the necessary effect is to evaluate a debtor's exemptions as if the case had been filed under chapter 7 from the outset. It makes sense, therefore, that there be congruity between the treatment of a debtor's exemptions in a converted chapter 7 case and in a hypothetical chapter 7 case.

Had the Debtors filed this case originally under chapter 7, there can be no dispute that the Debtors would be entitled to the Remainder. The same outcome would obtain if the Chapter 7 Trustee had sold the Fusion instead: He would have been obliged, after payment of Capital One's secured claim, to remit the balance to the Debtors up to $3,000 on account of their exemption.[64] When chapter 7 trustees administer estate property, they must pay debtors the proceeds of such property up to the amount of any claimed exemption therein because, with certain exceptions not

---

[63] *Adams v. Bostick (In re Bostick)*, 400 B.R 348, 359 (Bankr. D. Conn. 2009) (quoting *In re Fobber*, 256 B.R. at 277-78); *see also In re Barrera*, 620 B.R. at 653 ("[T]he broader concept that the legislative history points toward is Congress'[s] intent to leave a debtor who attempts a repayment plan no worse off than he would have been had he filed a chapter 7 case at the outset.").

[64] Of course, the Chapter 7 Trustee would not have sold the Fusion since there was no equity above Capital One's secured claim and the Debtors' exemption for the benefit of the estate.

relevant to this case, the Code expressly prohibits exempt property from being used to pay any pre-petition debt or administrative expense.[65] The Chapter 7 Trustee could not argue that the destruction or sale of the Fusion eliminated the Debtors' exemption and made the proceeds attributable to the Fusion—whether from the at-fault driver's insurance company or from the sale—available for distribution to creditors. Failing to award the Remainder to the Debtors therefore places them in a worse economic position than if they had filed chapter 7 originally.

The Court can find no basis in statute or rule that would award the Remainder to the Debtors had they stayed in chapter 13 or hypothetically filed under chapter 7 but deny it to them because they converted their case from chapter 13 to chapter 7. Such an anomalous result finds no support in the law. Simply put, while the act of conversion redefines the chapter 7 estate, the property that enters that estate does so with the exemptions given to them as of the petition date.[66]

While the Court could deny the Chapter 7 Trustee's Objection to Exemption on those bases alone, the Court notes that permitting the Debtors an exemption in the Proceeds also furthers longstanding Congressional policy. In decisions issued after the enactment of the Bankruptcy Reform Act of 1978, courts noted clear Congressional intent to encourage the use of chapter 13 under the Code.[67] When Congress adopted § 348(f) as part of the Bankruptcy Reform Act of

---

[65] § 522(c), (k); *see also Davis v. Davis (In re Davis)*, 170 F.3d 475, 478-79 (5th Cir. 1999) ("Generally, unless a case is dismissed, exempt property may not be held liable to repay any pre-petition debt of the debtor. . . . Such property is no longer available for distribution to creditors, and it is not subject to charge for bankruptcy administrative fees.").

[66] Subject, of course, to valid objections.

[67] *E.g.*, *Lucoski v. IRS (In re Lucoski)*, 126 B.R. 332, 342 (S.D. Ind. 1991) ("[O]ne of the aims of the 1978 revisions to the Bankruptcy Code was to promote the use of Chapter 13 . . . ."); *Ill. Dep't of Public Aid v. Jones (In re Jones)*, 31 B.R. 485, 488 (Bankr. N.D. Ill. 1983) ("Legislative history shows that Congress fully intended to promote more widespread use of Chapter 13 than was realized under Chapter XIII of the Bankruptcy Act."); *Gen. Fin. Co. of Va. v. Powell (In re Powell)*, 2 B.R. 314, 315 (Bankr. E.D. Va. 1980) ("It is the clear intent of the Congress to promote Chapter 13 plans in contradistinction to Chapter 7 liquidation.").

21

1994,[68] it did so to eliminate a "serious disincentive" to filing chapter 13 emanating from a line of

cases that held that after-acquired property in a chapter 13 became property of the chapter 7 estate

upon conversion:

> This amendment would clarify the Code to resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7. The problem arises because in chapter 13 (and chapter 12), any property acquired after the petition becomes property of the estate, at least until confirmation of a plan. Some courts have held that if the case is converted, all of this after-acquired property becomes part of the estate in the converted chapter 7 case, even though the statutory provisions making it property of the estate do not apply to chapter 7. Other courts have held that property of the estate in a converted case is the property the debtor had when the original chapter 13 petition was filed.
>
> These latter courts have noted that to hold otherwise would create a serious disincentive to chapter 13 filings. For example, a debtor who had $10,000 equity in a home at the beginning of the case, in a State with a $10,000 homestead exemption, would have to be counseled concerning the risk that after he or she paid off a $10,000 second mortgage in the chapter 13 case, creating $10,000 in equity, there would be a risk that the home could be lost if the case were converted to chapter 7 (which can occur involuntarily). If all of the debtor's property at the time of conversion is property of the chapter 7 estate, the trustee would sell the home, to realize the $10,000 in equity for the unsecured creditors and the debtor would lose the home.[69]

The House Report made clear that the addition of § 348(f) was meant to adopt the reasoning of *In*

*re Bobroff*, where the Third Circuit had expressed its concerns in this way: "If debtors must take

the risk that property acquired during the course of an attempt at repayment will have to be

liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter

13—which must be voluntary—a try will be greatly diminished."[70]

---

[68] Pub. L. No. 103-394, § 311, 108 Stat. 4106 (1994).
[69] H.R. Rep. No. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366.
[70] *Bobroff v. Cont'l Bank (In re Bobroff)*, 766 F.2d 797, 803 (3d Cir. 1985).

22

The 1994 amendment can be read, in part, as Congress defending the incentive to file chapter 13 cases from diminution.[71] The Third Circuit took up that defense in a case addressing whether a chapter 13 trustee must, upon a debtor's conversion to chapter 7, return to the debtor funds paid to the trustee under the debtor's plan that remained undistributed or distribute them to creditors in accordance with that plan,[72] a dispute that the Supreme Court later resolved in *Harris*. As support for its conclusion that the funds must be returned to the debtor, the Third Circuit noted that to hold otherwise "would dissuade debtors from filing under Chapter 13," the very concern that underlay the Circuit's *Bobroff* decision.[73] *Michael* therefore invoked and built upon the policy foundation laid in *Bobroff* and on which Congress placed its imprimatur in 1994. Congress and Courts of Appeals have made it clear that § 348(f) should be read to promote chapter 13.[74]

To be sure, § 348(f) does not speak to exemptions. But "the Congressional policy of encouraging debtors to repay their creditors via Chapter 13 is furthered by debtors (and their counsel) knowing they will not be penalized for attempting Chapter 13,"[75] and that policy transcends § 348(f). Debtors in this District would be discouraged from filing chapter 13 if they knew that they bore a risk of losing their exemptions in proceeds of certain properly-exempted property damaged or destroyed post-petition but prior to conversion to chapter 7 because Utah law

---

[71] *See Kendall v. Lynch (In re Lynch)*, 363 B.R. 101, 106 (9th Cir BAP. 2007) ("[I]n adopting the amended version of § 348(f)(1) in 1994, Congress intended to encourage chapter 13 filings rather than chapter 7 liquidations." (citing *In re Jackson*, 317 B.R. 511, 516 (Bankr. N.D. Ill. 2004))).

[72] *See In re Michael*, 699 F.3d at 308-09 ("Section 348(f) . . . did not resolve explicitly whether the Chapter 13 trustee should give the funds to the debtor or distribute them to creditors under the confirmed Chapter 13 plan.").

[73] *Id.* at 315.

[74] *See id.* at 315-16 ("[S]ince the passage of § 348(f), all Courts of Appeals that have considered the disposition of a Chapter 13 estate's property on conversion to Chapter 7 have concluded that the policy reasoning we expressed in *Bobroff* now has become settled law." (collecting cases)).

[75] *In re Boggs*, 137 B.R. 408, 411 (Bankr. W.D. Wash. 1992).

23

lacks a proceeds exemption applicable to that property. The chilling effect on chapter 13 filings would arguably be the most intense when debtors considered what could happen if their vehicles were the property damaged or destroyed, since Utah's exemption statute conspicuously lacks an exemption in proceeds of a vehicle. As noted by Justice Sotomayor, "[f]or many, having a car is essential to maintaining employment,"[76] and the income earned from that employment funds debtors' chapter 13 plans. If the Chapter 7 Trustee's position were adopted, it could easily lead debtors through a cascading series of negative consequences: An auto accident that damages or destroys a debtor's car causes her to lose hours at her job (or the job entirely) due to inadequate transportation; she gets behind on her chapter 13 plan payments as a result; she converts to chapter 7 (or a party in interest forces the conversion) only to find that the proceeds she expected to use to purchase a replacement vehicle are not exemptible and must be turned over to the chapter 7 trustee; without those proceeds the debtor loses her primary, and perhaps only, means to repair or replace the vehicle; and without a reliable vehicle, the debtor's access to steady employment is diminished, as is her "access to childcare, groceries, medical appointments, and other necessities."[77]

The blind caprice of an auto accident should not lead debtors into this pernicious bramble, which obstructs their "clear field for future effort."[78] Nor should the misfortune of any post-petition casualty loss be doubled by eviscerating a debtor's applicable exemption in the proceeds of damaged or destroyed property. But were the Chapter 7 Trustee's position the law, debtors who viewed these potential consequences might rationally eschew chapter 13 rather than put their

[76] *City of Chicago v. Fulton*, 592 U.S. ----, ----, 141 S.Ct. 585, 593 (2021) (Sotomayor, J., concurring).
[77] *Id.* at 594.
[78] *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)).

property at risk—property that debtors expect to keep when they file under chapter 13.[79] Because

the Chapter 7 Trustee's position penalizes debtors for attempting repayment under chapter 13 and

conflicts with the Congressional policy of encouraging chapter 13 cases, it is disfavored.

The Court concludes that the Debtors properly claimed an exemption of $3,000 in value in

the Fusion and they are entitled to exempt that amount from the Proceeds. The Court will therefore

overrule the Chapter 7 Trustee's Objection to Exemption.[80]

## IV. CONCLUSION

Although the Proceeds became part of the chapter 7 estate upon conversion, the Debtors

exempted $3,000 in value of those Proceeds. And since the Remainder is less than $3,000, the

Debtors are entitled to the entire Remainder. The Court will deny the Chapter 7 Trustee's Motion

for Turnover, grant the Chapter 13 Trustee's Motion to Disburse, and order that the Remainder be

---

[79] *See Harris*, 575 U.S. at 514 ("Chapter 13 allows a debtor to retain his property if he proposes, and gains court confirmation of, a plan to repay his debts over a three- to five-year period." (citations omitted)).

[80] Because the Court has concluded that the Debtors are entitled to the entire Remainder, it does not need to address the Debtors' alternative argument that they should receive at least $757.16—the difference between Capital One's claim of $2,569.57 and the $1,812.41 balance owing on that claim at the time of the accident—in the event that the Court determined that the Proceeds were property of the chapter 7 estate and the Debtors were not entitled to an exemption therein. The Debtors contend that the $757.16 represents post-petition equity in the Fusion created by reducing Capital One's claim through the Debtors' chapter 13 plan payments, and that such equity is not included in the chapter 7 estate. The Court notes that the majority of decisions support the Debtors' contention, *see In re Barrera*, 620 B.R. at 650 ("[M]any other courts have reached the conclusion that any postpetition increase in equity in a prepetition asset, whether from appreciation or from the debtor's repayment of secured debt, is not property of the estate on conversion from chapter 13 to chapter 7." (citations omitted)), but there is a significant minority position. *Id.* at 649 (collecting cases). The question of whether post-petition equity—specifically from appreciation in value rather than paydown of debt—becomes property of a chapter 7 estate upon conversion is now before the Tenth Circuit Court of Appeals. *See* Appellant Simon E. Rodriguez's Opening Brief at 2, *Rodriguez v. Barrera (In re Barrera)*, No. 20-1376 (10th Cir. Dec. 8, 2020); Response Brief of Julio Cesar Barrera and Maria De La Luz Moro, Appellees at 1, *Rodriguez v. Barrera (In re Barrera)*, No. 20-1376 (10th Cir. Jan. 7, 2021).

remitted to the Debtors. A separate Order and Judgment will be issued in accordance with this

Memorandum Decision.

_____END OF DOCUMENT_____

_____ooo0ooo_____

## DESIGNATION OF PARTIES TO RECEIVE NOTICE

Service of the foregoing **MEMORANDUM DECISION** shall be served to the parties and in the manner designated below.

**By Electronic Service:** I certify that the parties of record in this case as identified below, are registered CM/ECF users:

| | |
|---|---|
| Robert A. Eder, Jr. | rob@ederlaw.net, mindy@ederlaw.net, |
| | rob@ecf.inforuptcy.com, autumn@ederlaw.net |
| Bryant Thomas Hinckley | bhinckley@agutah.gov |
| Stephen W. Rupp | rupptrustee@mbt-law.com, UT03@ecfcbis.com |
| U.S. Trustee | USTPRegion19.SK.ECF@usdoj.gov |

**By U.S. Mail:** In addition to the parties of record receiving notice through the CM/ECF system, the following parties should be served notice pursuant to Fed. R. Civ. P. 5(b).

- None.